UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTT V. HAMILTON,

                              Plaintiff,

      v.                                                  **DECISION AND ORDER**
                                                                     13-CV-516S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

      1.      Plaintiff, Scott Hamilton, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act").

      2.      Alleging disability due to, among other things, back and neck pain beginning in August of 2010, Hamilton applied for Social Security benefits.[1] The Commissioner of Social Security ("Commissioner") denied that application, and as result, Hamilton requested an administrative hearing. He received a hearing before ALJ William M. Weir on September 19, 2012. The ALJ considered the case *de novo*, and on November 19, 2012 issued a decision denying Hamilton's application. Hamilton filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action, challenging Defendant's final decision.[2]

      3.      On December 20, 2013, the Commissioner and Hamilton both filed motions

---

[1] Hamilton initially alleged that his disability began on July 31, 2009. Because he later testified that he was able to perform full-time work after that date, he amended his onset date at the hearing.

[2] The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing concluded in February of 2014, at which time this Court took the motions under review. For the following reasons, the Commissioner's motion is granted and Hamilton's is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference

and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. In this case, the ALJ made the following findings: (1) Hamilton has not engaged in substantial gainful activity since his amended onset date (R. 22);[3] (2) Hamilton suffers from degenerative disc disease of the lumbar and cervical spine, a severe impairment (id.); (3) he does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. 24); (4) he cannot perform past work but he retains the residual functional capacity ("RFC") to perform light work with some restrictions in bending and use of his fingers (R. 25); and (5) there are jobs that exist in significant numbers in the national economy that he can perform. (R. 31.) Ultimately, the ALJ concluded that Hamilton was not under a disability, as defined by the Act, from his onset date through the date of the decision. (Id.)

9. Hamilton raises several objections to the ALJ's finding. Each that require discussion will be addressed below.

10. In his reply brief, Hamilton (for the first time) contends that the ALJ erred by failing to find him disabled at Step 3. At that step, the ALJ found, *inter alia*, that "the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord." (R. 24.) Hamilton contends this was in error and that his impairments meet the stringent requirements of Listing 1.04, rendering him disabled *per se.*

11. To satisfy Listing 1.04, Hamilton must establish, among other things, that he suffers from a disorder of the spine "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.04. Hamilton appears to argue that he meets this first criteria of Listing 1.04 because a September 8,

---

[3]Citations to the underlying administrative record are designated "R."

2010 MRI showed "deformity of the ventral border of the thecal sac." (Pl.'s Reply Br. at 3.) But there is no discussion of the necessary "compromise of a nerve root." And Hamilton makes no attempt to demonstrate how a deformity of the "ventral border of the thecal sac" is tantamount to nerve root compression. As other courts have noted, the two ailments – deformity of the thecal sac and nerve root compression – are not one in the same. See, e.g., McKenna v. Apfel, 246 F.3d 675 (9th Cir. 2000) ("[T]here was no indication of nerve compression. . . . [claimaint] had only a mild disc bulging and deformity of the thecal sac."). This is fatal to Hamilton's claim that he meets the main requirement of Listing 1.04. And the ALJ's decision at this step was therefore not erroneous.

12. Hamilton next argues that the ALJ failed to resolve inconsistences between (1) the testimony of a vocational expert ("VE"), identified as "Mr. Philips," (2) the Dictionary of Occupational Titles ("DOT"), and (3) the ALJ's hypothetical, which he posed to Mr. Philips.

13. The ALJ posed the following hypothetical, as relevant, to the VE: Do jobs exist for a person who can perform light work but who has postural limitations and who can only use his non-dominant hand "as an assistive hand with occasional ability to use the fingers in assisting"? (R. 74.) The VE answered "yes": a person with those limitations could perform the job of fruit cutter. The VE explained that a person performing this job would use his dominant hand to cut the fruit and his non-dominant hand to "assist" – to steady the fruit while it is being cut.

14. Hamilton notes that the DOT defines the job of fruit cutter as entailing "frequent" reaching, handling, and fingering. See DICOT 521.687-066, 1991 WL 674221. This, argues Hamilton, is inconsistent with the ALJ's limitation to "occasional ability to use

the fingers in assisting."

But the VE explained that the non-dominant hand is the only hand engaged in frequent reaching, handling, and fingering, while the non-dominant (the hand where Hamilton has limitations) is merely used to assist and to steady the fruit. (R. 77-78.) The VE never testified that the use of the non-dominant hand in this job required more than "occasional use of the fingers for fine manipulation." (R. 25.) While "some fine motor coordination would be required," (R. 78), when the VE was asked whether one would need "the ability to grip" to perform this job, he answered "No." (R. 79.) In other words, consistent with the ALJ's hypothetical, the non-dominant would be used to assist and there no indication that anything other than occasional fine manipulation is required. This Court therefore finds no error either in the ALJ's reliance on the VE or the ALJ's determination that Hamilton could perform the job of fruit cutter.

15. Finally, Hamilton argues that the ALJ failed to perform a function-by-function analysis in rendering his RFC and, that, despite the Second Circuit's holding in <u>Cichocki v. Astrue</u>, 729 F.3d 172, 174–74 (2d Cir. 2013) that such an analysis is not necessarily cause for remand, the lack of a nexus between the RFC and the evidence precludes meaningful review and, under <u>Cichocki</u>, that error does constitute grounds for remand.

16. This Court, however, finds no lack-of-nexus error. This Court must first note, however, that Hamilton correctly finds fault in the ALJ's reliance on Dr. Tyler's recommendation that Hamilton participate in aerobic activity. This recommendation, Dr. Tyler later clarified, was given to all patients who suffer from similar symptoms as Hamilton, and it "should not be construed as a statement of functionality." (R. 570.) Although the ALJ identified Dr. Tyler's recommendation as evidence that Hamilton may be able to perform

more activity than he claims, this is hardly the only evidence on which the ALJ relied. Indeed, the ALJ's RFC analysis runs over five pages in length, and it details substantial evidence – even putting aside any error with respect to Dr. Tyler – on which he relied in making his RFC finding.

17. For one, there is no medical opinion suggesting that Hamilton cannot work or has functional limitations that suggest he cannot perform light work with some restrictions. And the ALJ of course is entitled to rely not only on what the record says, but "also on what it does not say." See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983).

18. Further, a consultive examiner – again, someone on whom the ALJ is entitled to rely, see, e.g., Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995); Gray v. Astrue, No. 09-CV-00584, 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011) – found limitations only in repetitive bending, twisting, lifting, carrying, pushing, and pulling of "heavy objects." As the ALJ found, this finding was "consistent with rather moderate" abnormal signs during physical examination and diagnostic testing. (R. 29.)

19. There was also a discrepancy between the treatment notes and Hamilton's testimony regarding the last time he played hockey. Hamilton testified he had not played since 2009 or 2010. But treatment notes from 2012 say that he played six months ago. As the ALJ noted (and as Hamilton's attorney argued), it is possible that this is simply a "carryover statement" – a repeated notation that originated years before. But that explanation is called into doubt by that fact that it appears in the treatment notes of two different entities. This Court therefore finds no reversible error in the ALJ's consideration of the discrepancy between Hamilton's testimony and the treatment notes.

20. What is more, the ALJ attempted to resolve any discrepancies by re-contacting Drs. Kaufman, Cicchetti, and Roger; but he received no response.

21. Finally, the evidence surrounding his mental impairments reflected "essentially normal findings. (R. 30.)

22. Accordingly, this Court finds that the "ALJ's analysis at Step Four regarding [Hamilton's] functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence." See Cichocki, 729 F.3d at 177.

23. This Court has no doubt that Hamilton suffers from pain. But the questions before this Court are not whether it believes that the pain prevents him from working but whether the ALJ's determination is supported by substantial evidence and whether he committed any reversible errors in making that determination. Grey, 721 F.2d at 46. After undertaking a careful review of the record and the parties' various contentions, this Court is satisfied that ALJ Weir's determination is based on substantial evidence and contains no reversible error. Hamilton's motion must therefore be denied, and the Commissioner's must be granted.

****

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: June 22, 2014
      Buffalo, New York

                                        /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                            Chief Judge
                                   United States District Court